UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM BRADLEY,

     Applicant,

v.                               CASE NO.  8:14-cv-2504-T-23CPT

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

William Bradley applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges the validity of his state conviction for robbery while wearing a hood, mask, or other device to conceal his identity.  The respondent admits the application's timeliness.  (Doc. 5 at 3)  Numerous exhibits ("Resp. Ex. __") support the response.  (Doc. 7)  Bradley replied.  (Doc. 8)  The respondent correctly argues that Bradley fails to prove entitlement to relief.

### I.  FACTS[1]

On July 12, 2008, Peter Moore, a night auditor at the Best Western hotel in Palm Harbor, completed a report, turned out the lights in the office adjacent to the lighted front desk area, and put his head down to rest.  Four or five minutes later

_____

[1] This factual summary derives from the trial transcript and the initial brief on direct appeal. (Resp. Exs. 2 and 6)

Moore heard a sound and looked up to see a man, whose face was covered with a green cloth. Moore testified that the man moved swiftly behind Moore, put his hand on Moore's shoulder, and directed Moore to go to the front desk and open the cash drawer. After the man emptied the cash from the drawer, he directed Moore to open the cash register. Moore complied. The man emptied the register, took Moore to the office, and instructed Moore to lie on his stomach. After the man bound Moore's hands and ankles, Moore heard sounds that suggested the man was tampering with the video equipment. The man left the office and darted past a hotel guest who entered the lobby. The guest observed that the man was a black male wearing shorts and a tank top. After the man left the hotel, the guest found Moore and cut Moore's bindings. Neither the guest nor Moore could identify the man. The man was behind Moore during the robbery but Moore observed a "brown arm." Moore testified that the man knew about the front desk cash drawer, which was not part of a cash register.

Also, Moore testified that the door for discs on the hotel's surveillance equipment was closed before the robbery but was open afterward. Police obtained video evidence from the hard drive of the DVR device. Video surveillance showed the masked man going over the front desk at 2:06 a.m. Exterior video surveillance showed the man walking in the parking lot at 2:03 a.m. and at 2:10 a.m. Police showed the video evidence to Dimitar Mitzev, the front desk manager, who was uncertain but believed that the masked man was Bradley, a former hotel maintenance

- 2 -

employee. Police showed the video evidence to Barry Carnahan, a former maintenance employee who infrequently worked with Bradley at the hotel. Carnahan thought that he recognized the masked man on the video from the manner in which the man carried himself and was dressed, but Carnahan was less than certain of the man's identity because Carnahan did not see the man's face. Carnahan testified that Bradley was the only black man at the hotel. Terminated a week or two before the robbery, Bradley was employed at the hotel for about a month.

Bradley received his final paycheck about fourteen hours before the robbery. Carl Griggs, who once worked with Bradley for a day-labor service, drove Bradley to the hotel the day before the robbery. After collecting his paycheck, Bradley told Griggs that in his paycheck Bradley had been "shorted" by several hours' pay. At Bradley's request the following morning (July 12, 2008), Griggs took Bradley to the bus station in Clearwater. Bradley gave Griggs a pair of Adidas shoes. Bradley told Griggs that he could not afford the bus ticket, and Griggs drove Bradley home. Griggs gave police the shoes Bradley gave him. An FDLE analyst both compared the shoes with a partial shoe print found on the front desk and determined that the left shoe could have formed the print. Bradley's shoe had no unique characteristics but the shoe had the same design, size, and shape as the shoe print.

DNA testing established that Bradley's DNA profile matched — at eleven of thirteen areas — the profile on a partially smoked cigarette found on the floor of the office where the masked man confronted Moore. Smoking was not

allowed in the building, and the hotel manager did not recall seeing a cigarette butt on the office floor when his shift ended. Moore began his shift the evening before the robbery. Moore testified that he was "very certain" that the cigarette butt was not on the office floor before the robbery.

The jury convicted Bradley of robbery while wearing a hood, mask, or other device to conceal his identity. The state trial court sentenced Bradley to life imprisonment as a violent career criminal (as a releasee offender, Bradley faced a thirty-year minimum mandatory sentence).

## II. STANDARDS OF REVIEW

A federal court may not grant habeas relief on a claim adjudicated in state court unless the adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A habeas applicant "meets this demanding standard only when he shows that the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Dunn v. Madison*, 138 S. Ct. 9, 11 (2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). If a state court's decision is unaccompanied by an opinion explaining the denial of relief, a federal habeas court must determine "what arguments or theories" could have supported the state court's decision and "ask

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102.

Under § 2254(d)(2), the state court's factual findings are entitled to "substantial deference" and will not be disturbed if reasonable minds reviewing the record might disagree about the finding in question. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). The habeas court presumes that the state court's determination of a factual issue is correct, unless the applicant rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Bradley claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). To demonstrate that counsel was constitutionally ineffective, an applicant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the applicant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court presumes that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. To establish prejudice under *Strickland*, an applicant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." 466 U.S. at 694. "[W]hen a court is evaluating an ineffective-assistance claim, the ultimate inquiry must concentrate on 'the fundamental fairness of the proceeding.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017) (quoting *Strickland*, 466 U.S. at 696).

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## III. DISCUSSION

### A. Ground Two and Subclaim Two of Ground Three

Bradley challenges both the State's evidence that he was the perpetrator and his trial counsel's effectiveness in arguing the motion for judgment of acquittal.

#### 1. Ground Two

Bradley alleges that the state trial court deprived him of his constitutional right to due process by denying his motion for judgment of acquittal. (Doc. 1 at 15 and 19) He contends the evidence was insufficient to establish his identity as the perpetrator. (Doc. 1 at 15) Bradley did not raise this argument in support of a judgment of acquittal at trial, but on direct appeal he raised the argument as

fundamental error.[2]  The State argued that Bradley did not preserve the issue and in

the alternative, that the State introduced competent, substantial evidence that Bradley

committed the robbery.  The state appellate court *per curiam* affirmed.  *Bradley v. State*,

67 So. 3d 207 (Fla. 2d DCA 2011).[3]  The state court's decision warrants deference

under Section 2254(d) as an adjudication on the merits.[4]

The Due Process Clause of the Fourteenth Amendment requires the state to

prove beyond a reasonable doubt each element of the offense charged.  *Jackson v.*

*Virginia*, 443 U.S. 307, 316 (1979).  The governing question is "whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable

doubt."  443 U.S. at 319 (emphasis in original).  "When the record reflects facts that

support conflicting inferences, there is a presumption that the jury resolved those

conflicts in favor of the prosecution and against the defendant."  *Preston v. Sec'y, Fla.*

*Dep't of Corr.*, 785 F.3d 449, 463 (11th Cir. 2015) (citation omitted).  *Jackson* "makes

---

[2]  "Florida's doctrine of fundamental error permits a court to review an issue that was not preserved in the trial court." *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1328, n.3 (11th Cir.) (citing *State v. Delva*, 575 So. 2d 643, 644–45 (Fla. 1991)), *cert. denied sub nom. Rambaran v. Jones*, 137 S. Ct. 505 (2016).

[3]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99.  *See also Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1353 (11th Cir. 2012) ("[D]eference is presumed unless the state court clearly states that its decision was based solely on a state procedural rule.") (quotation marks omitted).

[4]  Because this ground is denied on the merits, exhaustion is not addressed. 28 U.S.C. § 2254(b)(2).

clear that it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." *Cavazos*, 565 U.S. at 2 (citation omitted).

The state court's rejection of Bradley's challenge to the sufficiency of the evidence is not objectively unreasonable. The jury observed the video evidence that showed the masked man climbing over the counter of the front desk and walking outside the hotel, and from this evidence the jury could compare the man's build with that of Bradley. A partial shoe print on the front desk counter had the same design, size, and shape as the left shoe of the pair that Bradley gave his friend after the robbery. (Resp. Ex. 2, v. 2 at 244) The jury could find from the video evidence and print comparison that the shoes worn by the masked man were those Bradley gave Griggs. In addition, the jury could infer — from both this evidence and Moore's testimony that he heard sounds as if the man was tampering with the surveillance equipment — that Bradley knew the hotel had video surveillance and wanted to divest himself of, or remove, inculpatory evidence.

From Moore's testimony that on about four or five occasions he had observed Bradley when Moore started his shift (Resp. Ex. 2, v. 2 at 146, 154–55, 279), the jury

could find that Bradley observed Moore on those occasions and knew when Moore came on duty. And from Moore's testimony that the man knew about the cash drawer (Resp. Ex. 2, v. 2 at 139, 143), the jury could infer that Bradley knew Moore would have access to the cash drawer.

Bradley argues that Moore and the hotel guest who found Moore could not identify Bradley as the masked man. (Doc. 1 at 17) This argument goes to the weight of the evidence. The front desk manager and Carnahan gave testimony that was not definitive but was probative of Bradley's identity as the perpetrator. Bradley argues that when the prosecutor asked the manager to point Bradley out for the jury, the prosecutor asked another question, interrupting the manager's testimony, and the manager did not identify Bradley as the masked man. (Doc. 1 at 17) A review of record discloses that the manager testified, "I see him sitting right across — (indicating)." (Resp. Ex. 2, v. 2 at 198) From the manager's testimony that he knew Bradley and that the man on video appeared to be Bradley, the state court could reasonably determine that the manager identified Bradley as the masked man.

Bradley argues that the manager testified on cross-examination that "he could not point a finger at anyone." (Doc. 1 at 18) Bradley also argues that Carnahan, when shown the video, was not certain who the masked man was because the man's face was concealed. (Doc. 1 at 18) The manager's and Carnahan's testimony was not conclusive on the identity of the masked man, but the jury could infer from their testimony — together with the shoe print comparison and the evidence that Bradley's

DNA was on the partially consumed cigarette found on the office floor — that Bradley was the masked man. The manager did not recall seeing a cigarette on the office floor when his shift ended and Moore took over before the robbery, and Moore was "very certain" the cigarette was not on the floor before the robbery. (Resp. Ex. 2, v. 2 at 144, 196) The prosecutor argued that Bradley discarded the cigarette during the robbery. In addition the prosecutor argued both that a photo from the exterior video showed that, before entering the hotel, Bradley made a motion to his mouth and that Bradley was smoking at the time. (Resp. Ex. 2, v. 2 at 167, 181, 282) The jury decided these questions by its verdict, and the jury's decision is supported by the record.[5]

The evidence, when viewed in the light most favorable to the State, was sufficient for a rational trier of fact to find beyond a reasonable doubt that Bradley was the perpetrator, an essential element of the robbery charge. As a consequence Bradley cannot demonstrate that the state appellate court's affirmance was contrary to, or an unreasonable application of, *Jackson* or was based on an unreasonable determination of fact. Ground two warrants no relief.

---

[5] Also, the jury determined veracity of the reason Bradley gave Griggs for not departing on a bus. Bradley's trial counsel utilized Griggs' testimony — that Bradley stated he could not afford the bus ticket — to question the State's position that Bradley committed the robbery. (Resp. Ex. 2, v. 2 at 282) The prosecutor questioned the truthfulness of Bradley's statement to Griggs. (Resp. Ex. 2, v. 2 at 295) "[I]t is not the job of this Court . . . to decide whether the State's theory was correct." *Cavazos*, 565 U.S. at 8.

## 2. Subclaim Two of Ground Three

Bradley contends that in moving for a judgment of acquittal his trial counsel rendered ineffective assistance by not arguing that the State failed to establish Bradley's identity as the perpetrator and, thereby, failed to preserve the issue for appeal. (Doc. 1 at 34 and 37) Bradley raised this ground in his post-conviction motion. (Resp. Ex. 9 at 11–13) The post-conviction court found that the trial transcript disclosed that the State presented sufficient evidence to permit the jury to negate all reasonable hypotheses of Bradley's innocence. (Resp. Ex. 12 at 4) The state court gave this analysis in denying relief (Resp. Ex. 12 at 4–5) (record citations and additional authority omitted):

> Mr. Mitzev [the manager] and Mr. Carnahan [the former employee] positively identified — albeit without complete certainty — Defendant as the person they witnessed on the videotapes. Additionally, the State also presented physical evidence placing Defendant at the scene of the crime. First, Sergeant Nygren testified he observed a partially smoked cigarette laying on the floor of the hotel lobby, which forensic specialist Stacy Wall later collected. Diane Williams a Florida Department of Law Enforcement crime laboratory analyst, then positively matched the DNA present on the cigarette with the DNA lifted from Defendant's buccal swab. Second, Sergeant Nygren further testified Defendant's friend, Carl Griggs, provided him with a pair of Defendant's shoes. When compared with photographs of a shoe print left behind at the crime scene, a[n] FDLE analysis [sic] determined the two were a match. Finally, the record reveals the jury had an opportunity to personally observe surveillance videos of the robbery.

> Given the abundance of evidence presented by the State at trial, Defendant's trial counsel would have had no grounds to successfully pursue a judgment of acquittal. *See Mosley v. State*, 46 So. 3d 510, 526 (Fla. 2009) ("A motion for judgment of acquittal should not be granted unless 'there is no view of the

evidence which the jury might take favorable to the opposite party that can be sustained under law.'") (quoting *Williams v. State*, 967 So. 2d 735, 755 (Fla. 2007)). Accordingly, any attempt by trial counsel would have proven meritless.

Bradley admits that the state court correctly found that his DNA was on the partially smoked cigarette found at the scene but argues that this evidence is consistent with his "reasonable" hypothesis of innocence. (Doc. 1 at 40) Specifically, he argues that the cigarette "was left in the office" by Bradley when he collected his paycheck and that the cigarette was knocked to the floor "presumably by the robber." (Doc. 1 at 40–41)

In Florida, "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 460 (11th Cir. 2015) (citation omitted). The state courts have already determined — favorably to the State — what would have occurred under Florida law if Bradley's trial counsel had argued that the evidence was wholly circumstantial and that the evidence did not exclude every reasonable hypothesis except guilt. Consequently, Bradley cannot show that he was prejudiced by counsel's performance. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . . It is a fundamental principle that state

courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (citation and quotation marks omitted).

Bradley argues (Doc. 1 at 39–40) that the state court unreasonably found (1) that the hotel manager and Carnahan "positively identified — albeit without complete certainty — Defendant as the person they witnessed on video tapes" (Resp. Ex. 12 at 4) and (2) that, when Bradley's shoes obtained from his friend Griggs were compared with photographs of the shoe print at the crime scene, an FDLE analyst determined that the two were "a match." (Resp. Ex. 12 at 4) Bradley fails to rebut the presumption of correctness of the state court's findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A reasonable jurist might agree that the manager's identification of Bradley as the masked man was "positive" but was tempered by the manager's testimony that he was not certain. Although Carnahan testified neither that Bradley was the masked man nor that he told police that Bradley was the man, Carnahan testified both that he had the opportunity to observe Bradley's height, weight, and physical demeanor and that he told police who Carnahan believed was the masked man. (Resp. Ex. 2, v. 2 at 212) Asked what he recognized, Carnahan testified, "Just the way he carried himself and the way he was dressed." (Resp. Ex. 2, v. 2 at 213) On cross-examination Carnahan was asked, "basically was it your testimony that you recognized a similar build of the person on the video than that of Mr. Bradley." Carnahan responded, "No. He was the only man — actually he was the only black man that was at the motel." (Resp. Ex. 2, v. 2 at 214) Affording

Carnahan's testimony a generous interpretation, a reasonable mind might agree that Carnahan identified Bradley to police as the man whom the employee believed, but was not certain, was depicted on the video, based on the man's manner, dress, and race.

In addition a reasonable mind could agree — based on the FDLE analyst's testimony that the design, style, and size of the shoe print on the front desk counter corresponded with Bradley's shoe (Resp. Ex. 2, v. 2 at 244) — with the state court's finding that the analyst found a "match" based on the analyst's finding of "an agreement of class characteristics only." (Resp. Ex. 2, v. 2 at 247) In short, the state court's determinations of law and fact were not "so lacking in justification" as to give rise to error "beyond any possibility for fairminded disagreement." *Dunn*, 138 S. Ct. at 11.

Even assuming that none of the state court's findings about the manager, Carnahan, and the FDLE analyst's testimony are reasonable, independent review of the state decision yields the conclusion that Bradley is entitled to no relief on this ground. On *de novo* review, the standard for judging counsel's representation is a deferential one under *Strickland*. In light of the evidence of his guilt, Bradley fails to show both (1) that his trial counsel performed deficiently by not arguing that the State did not establish Bradley as the perpetrator and (2) that a reasonable probability exists that the trial court would have granted a judgment of acquittal. Subclaim two of ground three warrants no relief.

**B. Ground One and Subclaim One of Ground Three**

Bradley challenges both his appearance at trial in jail clothes and his trial counsel's effectiveness in not timely objecting to Bradley's appearance in jail clothes.

**1. Ground One**

Bradley alleges that his rights to due process and equal protection were violated because he was compelled to stand trial in jail clothes. (Doc. 1 at 7) He presented these constitutional claims on direct appeal. (Resp. Ex. 6) The State on appeal argued the issue was waived — and the respondent here argues the ground is procedurally defaulted — because Bradley did not object to wearing jail clothes until after the jury was sworn. While the lateness of Bradley's objection at trial heralds the demise of the claim of state court compulsion of Bradley to wear jail clothes at trial, this ground is exhausted and is not defaulted.

The Fourteenth Amendment guarantees the right to a fair trial, of which "[t]he presumption of innocence . . . is a basic component." *Estelle v. Williams*, 425 U.S. 501 (1976). "[S]tates may not compromise that presumption by requiring imprisoned defendants to wear prison garb during trial." *Hammonds v. Comm'r, Ala. Dep't of Corr.*, 712 F. App'x 841, 852 (11th Cir. 2017) (citing *Williams* at 503–13). "[T]he failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Williams*, 425 U.S. at 512–13.

The state court record discloses that, when he appeared for trial, Bradley did not object to wearing jail clothes. After the jury was sworn, Bradley objected to wearing jail clothes. The following exchange reveals that a week before trial Bradley was notified of his responsibility to dress for trial (Resp. Ex. 2, v. 1 at 114–16):

> [Trial Counsel]: First of all, my client wants to put on the record his objection to how he's dressed. He feels it's inappropriate to be before a jury in jail blues and wants —
>
> The Court: All right. First of all, they are not jail blues. It's orange.
>
> [Trial Counsel]: Right.
>
> The Court: Secondly, I instructed him last week when we had our status conference that it was his responsibility to come dressed out. And I offered to send him back to the jail to be dressed out, and he's chosen to go forward. He said basically he didn't make arrangements to get clothes.
>
> [Bradley]: No one told me —
>
> The Court: I also told you [that] you could go down to the Public Defender's office, and I don't know whether they were able to help you or not.
>
> [Trial Counsel]: They don't allow us to use their clothes closet.
>
> The Court: Okay. So you covered that during voir dire, and you have to live with the jurors' answers.
>
> [Bradley]: Your Honor, no one told me that I had to — gave me the opportunity to go back and dress out, no one.
>
> The Court: I told your attorney to inform you —
>
> [Bradley]: She didn't tell me.
>
> The Court: Ms. Pardo [Trial Counsel]?

[Trial Counsel]: If I could respond, the bailiff in the back told me that my client had said he had no clothes in property.

The Court: Okay. Thank you.

[Trial Counsel]: And he also told me there is [sic] no clothes available in booking to give them.

The Court: Okay. . . .

Bradley argues that he told the trial court that he was not informed he had the opportunity to return to the jail to change his clothing. (Doc. 1 at 9) But he does not deny that the trial court at the pre-trial conference advised him of his responsibility to dress for trial.[6] "A due process violation occurs not from an accused's appearance in prison clothes but from the compulsion that he so appear." *Williams*, 425 U.S. at 512–13. Because the trial court provided Bradley a sufficient opportunity to arrange for civilian clothes for trial and was amenable to allowing him to change clothes the morning of trial, Bradley fails to show that the trial court compelled him to stand trial in jail clothes in violation of due process or equal protection.[7] Bradley's failure to object before jury selection commenced to his

---

[6] In his reply Bradley contends that it was "made known" at the conference that he had no clothes and could not obtain any clothes. (Doc. 8 at 3) An earlier order (Doc. 13) denies Bradley's request to expand the record to include the transcript of the pre-trial hearing. Bradley admits the transcript was part of neither direct review nor post-conviction review. (Doc. 8 at 3)

[7] *See, e.g.*, *United States v. Rivera–Rodriguez*, 761 F.3d 105, 127 (1st Cir. 2014) ("[T]he court afforded Mercado–Cruz an opportunity to wear different clothing and he failed to take advantage of it. He had a substantial amount of time to arrange for regular clothing to be available for him before the October trial. Accordingly, no due process violation occurred.") (footnote omitted).

appearing for trial in jail clothes is sufficient "to negate the presence of compulsion necessary to establish a constitutional violation." *Williams*, 425 U.S. at 513.

Bradley shows no compulsion to stand trial in jail clothes when his trial was not delayed for the State or the trial court to arrange for Bradley to have civilian clothing. *See Tarpley v. Dugger*, 841 F.2d 359, 361 (11th Cir. 1988) (holding that substantial competent evidence supported the state trial judge's finding that the petitioner was not compelled to wear prison garb where, although the trial judge refused to remove the case from the docket and denied the petitioner's pre-trial motion for money to purchase clothes, (1) the trial judge offered the petitioner time to procure civilian clothing and suggested that he contact certain local agencies that might provide clothing for him and (2) no evidence showed that the defendant attempted to secure clothes from any of the agencies). Because he had the opportunity to obtain suitable clothing for trial, Bradley cannot show that he was compelled to stand trial in jail clothes in violation of due process or equal protection. The state decision was not contrary to or an unreasonable application of federal law as clearly established by the Supreme Court, *see* 28 U.S.C. § 2254(d)(1), and was not founded on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d)(2).

In the alternative, any constitutional violation that might have occurred did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The state trial court

asked the prospective jurors, "is there anyone on the panel that cannot presume Mr.

Bradley innocent by operation of our law" and stated, "I don't see any hands."

(Resp. Ex. 2, v. 1 at 48)  The trial court also advised the prospective jurors about the

"cloak of innocence" every defendant wears in the courtroom.  (Resp. Ex. 2, v. 1

at 52)  In addition, trial counsel addressed Bradley's attire (Resp. Ex. 2, v. 1

at 95–96):

> [Trial Counsel]:  His Honor went on for quite a while about a very important concept, about the fact that there is no burden of proof on this table. And today is a very important day for my client obviously.  He has been waiting for his day to go to trial since July of 2008. And since that day, he obviously has been incarcerated. He is sitting here before you in his jail blues. Does anybody have a problem with that? Does anybody believe that because he was unable to bond out of jail that that would mean for some reason that he is not to be presumed innocent or that he is somehow guilty because he doesn't have enough money to bond out or can't make a bond? Do all of you understand that it may take this long because of the way cases run in this courthouse and because of the amount of cases that we have in this courthouse, that it would just take that long for him to be able to have his day in trial?
>
> Is there anybody here that would hold that issue against him, the fact that he has been sitting in jail waiting for today and is not dressed in a nice suit and tie like some of you might be or like we are? Is anybody going to hold that against my client here today? Can I get a group answer? Yes or no?
>
> The prospective jury panel: No.

Bradley argues (1) that no prospective juror answered trial counsel's questions

about Bradley's inability to bond out of jail and (2) that the record does not show

whether each prospective juror responded to counsel's question about Bradley's

incarceration and clothes.  (Doc. 1 at 7)  The record is adequate to conclude from the

prospective jurors' collective response that none of the prospective jurors would consider Bradley's custody status or jail clothing.

Additionally, the trial court's instructions both to the prospective jurors and to the jury on Bradley's presumption of innocence rendered any possible constitutional error in his standing trial in jail clothes harmless beyond a reasonable doubt.[8] Bradley is entitled to no relief on ground one.

### 2. Ground Three, Subclaim One

Bradley alleges that "[w]ell in advance of trial" he told his trial counsel that he had no civilian clothes "fit to be worn" in front of a jury and did not want to stand trial while wearing a jail uniform, and in response his counsel assured him that counsel would take care of the matter. (Doc. 1 at 22) Bradley alleges that his trial counsel rendered ineffective assistance in not objecting before trial to Bradley's "being compelled" to stand trial in jail clothes. (Doc. 1 at 22) In denying relief, the state post-conviction court analyzed (Resp. Ex. 20 at 4) Bradley's argument:

> Defendant's further argument that counsel should have objected earlier ties in with his claim that counsel was ineffective for failing to timely object to the fact Defendant was wearing a jail uniform specifically during voir dire. The record reflects that counsel addressed Defendant's clothing with the entire prospective jury panel . . . and any prejudice resulting from counsel's failure to object to Defendant wearing jail attire prior to voir dire was cured when the entire jury panel

---

[8] "A jury is presumed to follow its instructions," *Blueford v. Arkansas*, 132 S. Ct. 2044, 2051 (2012) (quotation omitted), and the record discloses no evidence that Bradley's jury disregarded the trial court's instructions.

was made aware of this issue and indicated that they would not hold this against him.

In view of the prospective jurors' collective response, the state court reasonably concluded that Bradley showed no reasonable probability existed that the outcome of the proceeding would have been different had trial counsel objected earlier to Bradley's standing trial in jail clothes. Bradley contends that his counsel's manner of inquiry does not show (1) which question the panel answered, (2) whether each prospective juror did in fact respond, and (3) whether the responding prospective jurors served on his jury. (Doc. 1 at 23) Bradley shows no prospective juror expressed confusion over trial counsel's inquiries. And Bradley shows neither that a seated juror was not among the prospective jurors nor that individualized inquiry of the prospective jurors would have produced a different answer.

Also, Bradley contends that his trial counsel rendered ineffective assistance by not timely advising him of the state court's offer to return Bradley to the jail "to get dressed." (Doc. 1 at 21) The post-conviction court held both that Bradley failed to arrange for clothing and that he failed to show he was prejudiced by counsel's alleged ineffectiveness because Bradley had no clothes at the jail. (Resp. Ex. 20 at 5) Bradley failed to establish *Strickland* prejudice because he had a sufficient opportunity to arrange for civilian clothing before the trial court's offer and forbore the opportunity.

In view of the compelling evidence of Bradley's guilt and the trial court's proper instructions both to the venire and to the jury on Bradley's presumption of innocence, no reasonable probability existed of a different outcome had trial counsel either objected to Bradley's appearing in jail attire or advised Bradley about the trial court's offer before the trial commenced. *See Carter v. United States*, 288 F. App'x 648, 650 (11th Cir. 2008) ("The evidence against Carter on both counts was so strong that there is not a reasonable probability that a jury would have found him not guilty but for the fact that he appeared at trial in prison attire. Moreover, the trial judge properly instructed the jury on the presumption of innocence that was to be accorded to Carter. Because Carter has failed to establish prejudice as a result of appearing at trial in prison garb, he is unable to meet his burden under *Strickland*.").

Bradley has not shown that the state court's decision either was contrary to, or an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts. He is entitled to no relief on subclaim one of ground three.

## C. Ground Four

Bradley argues that his trial counsel rendered ineffective assistance by not objecting to the identification testimony. Bradley contends that, other than stating that the perpetrator was a black male, no state witness could positively identify Bradley as the perpetrator. (Doc. 1 at 44) Bradley argues "this improper [racial] identification was highly prejudicial" as he was the only black man at

the defense table.  (Doc. 1 at 44)  The post-conviction court rejected this claim

with this analysis (Resp. Ex. 12 at 3–4) (record citations and authority omitted):

> Defendant's argument is without merit as it [is] conclusively refuted by the record before the Court. Trial transcripts indicate that during the jury trial two of the State's witnesses testified they believed Defendant to be the perpetrator of the robbery. First, Dimitar [Mitzev], the front desk manager, testified he believed the individual on the video to be Defendant, but could not be absolutely certain. According to Mr. [Mitzev], his identification was based solely on his combined observations of the perpetrator's height, weight, and race. Second, Barry Carnahan, a former employee of the hotel where the robbery occurred, testified he believed Defendant was the individual in the video based on his observations of the perpetrator's dress, build, and mannerisms. Mr. Carnahan went on to state his belief was at least partially based on the fact Defendant was "the only black man at the hotel." In contrast two additional State witnesses testified they were not able to identify Defendant as the perpetrator. First, the victim, Peter Moore, testified on cross-examination that he was unable to determine the perpetrator's identity. Second, Michael Webster, who witnessed the perpetrator fleeing the scene, testified that although he witnessed a "black male with his face covered," he could not identify the person he saw that night.
>
> Recognizing the apparent inconsistences of the State's witnesses' testimony, trial counsel — during both cross-examinations and closing argument — highlighted the uncertainty of the in-court identifications, as well as any racial undertones that may have been present. Trial counsel also made it a point to illustrate for the jury that two of the State's witnesses were completely unable [to] identify the perpetrator of the crime. As such, there is no indication trial counsel's performance fell below the prevailing professional standard, or that trial counsel had any meritorious basis to raise an objection to the State's witnesses' testimony. Also, calling attention to the uncertain and possibly contradictory nature of the witnesses' testimony permitted the jury to consider all facets of the testimonial evidence presented by the State. Accordingly, Defendant has failed to demonstrate how trial counsel's alleged failures caused him to suffer prejudice "sufficient to undermine the outcome at trial."

Bradley shows no deficiency in counsel's performance because an objection would have been meritless. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (stating that counsel was not ineffective for failing to raise a non-meritorious issue). Bradley argues as objectionable the witnesses' testimony about Bradley's race, but Bradley fails to show that the witnesses' testimony about Bradley's race was not probative of the issue of identification. The masked man's race was a characteristic that contributed to his identification and that the witnesses could discern from the video evidence.

Bradley argues that the witnesses' identification testimony was highly prejudicial because he was the only black person at the defense table (Doc. 1 at 45), but "it is customary for the defendant to be seated at the table with his counsel," *United States v. Whatley*, 719 F.3d 1206, 1216 (11th Cir. 2013), and Bradley fails to show that the witnesses's testimony constituted an "improper [racial] identification." (Doc. 1 at 45) Their identification testimony had a sufficiently independent basis — their knowledge of Bradley's characteristics and their observations of the masked man on the video. These factors and the witnesses' admitted uncertainty about the identity of the perpetrator were matters for the jury to weigh.

Bradley contends that his trial counsel told him that counsel would object to the identification testimony. Also, Bradley contends that the state court's findings are incorrect because the record must necessarily show that his counsel objected to the testimony on the issue of identification. (Doc. 1 at 46) Because Bradley's

argument that the identification testimony was prejudicial lacked merit, a reasonable argument exists that counsel satisfied *Strickland*'s deferential standard. *Richter*, 562 U.S. at 105.

Bradley shows no *Strickland* prejudice. Had the trial court excluded the identification testimony, the jury would still have heard the manager's testimony that Bradley's employment with the hotel terminated a week or two before the robbery. The jury would have heard the manager's testimony that he did not recall a cigarette on the office floor when the manager ended his shift before the robbery. Given the other properly admitted evidence from which the jury could infer Bradley was the perpetrator — specifically, the video evidence, the shoe print comparison, and the testimony that Bradley's DNA profile matched the profile on the cigarette found on the office floor — no reasonable probability exists of a different outcome.

Bradley draws from the state court decision an implicit finding that his trial counsel's actions were strategic and argues that such a finding is generally improper under state law without an evidentiary hearing. (Doc. 1 at 46) Even assuming counsel's actions were not the product of strategy, Bradley fails to show that his counsel performed deficiently in not objecting to the identification testimony. In addition, Bradley's argument that the state court's summary denial of relief contravened state law is not cognizable on habeas review. *See Carroll v. Sec'y, Dep't. Of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[A] state court's failure to conduct an

evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief.").

The state decision on this ground is not contrary to, or an unreasonable application of, *Strickland* and is not based on an unreasonable determination of the facts. Ground four warrants no relief.

## D. Ground Five

Bradley contends that his trial counsel rendered ineffective assistance both by not investigating Bradley's history of mental illness and by not securing an evaluation of Bradley for competency to stand trial. (Doc. 1 at 49) Bradley alleges that he has an extensive history of mental illness dating back to his childhood — specifically, severe depressive disorder, anxiety disorder, and visual hallucinations — and that his niece informed Bradley's counsel of this history. Bradley alleges that while in the jail he received counseling, treatment, and medication for depression and anxiety. (Doc. 1 at 5) He contends (1) that he notified counsel of these medications and treatment and (2) that his counsel was aware that Bradley had in-patient treatment while in the custody of the Department. (Doc. 1 at 50)

Bradley asserts that he was undergoing extensive psychiatric treatment before and during trial and that "the record at trial" supports his contention that his competency was in doubt. (Doc. 1 at 51) He argues that counsel neither subpoenaed Bradley's mental health records nor sought a competency evaluation and, as a consequence, deprived Bradley of his state and federal rights to due process because

he was compelled to stand trial while incompetent. (Doc. 1 at 50–51) Bradley raised

this ground as a claim of ineffective assistance of counsel in his amended post-

conviction motion. (Resp. Ex. 11) After summarizing the parties' respective

arguments and addressing the standard for competency to proceed under Florida

Rule 3.211(a) (Resp. Ex. 18 at 5–6), the post-conviction court found as follows (Resp.

Ex. 18 at 5–6) (record citations omitted):

> Defendant's own statement at sentencing refutes his later claim
> that he was not aware of the content of that letter or that it was
> not of his own design. The contents of that letter make it clear
> that Defendant understood the charges against him, as he made
> claims within it that the State failed to file a legally sufficient
> charging document, described the charging document, and
> described the arresting officer's affidavit. The contents of that
> letter also make it clear that Defendant could appreciate the
> evidence that the State had against him and that he was able to
> disclose to counsel facts pertinent to the proceedings at issue, as
> he argued about the testimony of the various witnesses, claimed
> that his attorney failed to make pertinent objections, failed to
> properly investigate witnesses, and argued that the jury was
> against the weight of the evidence. Furthermore, the fact that
> Defendant repeatedly asked for his statement to be read into the
> record indicates that he understood the nature of the proceeding
> and the significant of having a complete record of the
> proceeding.

The post-conviction court addressed Bradley's statements at sentencing and found

(1) that he understood the adversary nature of the legal process, the nature of the

violent career criminal designation, and the range and nature of possible penalties

and (2) that he was able to disclose facts pertinent to the proceedings at issue, to

manifest appropriate courtroom behavior, and to testify relevantly. (Resp. Ex. 18

at 7–8)

The post-conviction court addressed Bradley's behavior at trial and concluded that Bradley failed to show that his counsel performed deficiently (Resp. Ex. 18 at 6–8):

> Furthermore the record reflects that Defendant was able to manifest appropriate courtroom behavior throughout the pendency of the trial and was able to respond to the Court respectfully and relevantly during various discussions. For example, when Defendant addressed the Court regarding his appearing in jail clothes, he was able to manifest appropriate behavior and respond appropriately to the Court's inquires. Subsequently, during Defendant's sworn testimony regarding his decision not to testify in this case, he clearly indicated his understanding of his right to testify or not testify, and his understanding of how the jury would be instructed regarding his decision. To the extent Defendant is contending that during this colloquy, he was merely reciting whatever his attorney told him to say, this assertion is without merit. Defendant was placed under oath and swore to tell the truth; while under oath, he indicated to the Court that he understood his rights and the consequences of his decision. While under oath, he indicated that he was making the decision freely and voluntarily. Defendant may not now go behind that sworn testimony in a post-conviction proceeding and claim that he did not understand the proceedings or what he was doing by choosing not to testify. Therefore, this also serves to indicate that Defendant understood the nature of the proceedings and that he clearly was able to manifest appropriate courtroom behavior and testify relevantly.
>
> The State argues that it is clear there was never any indication Defendant was incompetent for counsel to move the Court for a competency evaluation and, for the foregoing reasons, this Court agrees. Counsel cannot be said to be ineffective for failing to move for such a competency evaluation, as counsel cannot be deficient for failing to raise a meritless claim.

The state court's decision contains no error "so clear that fair-minded people could not disagree about it." *Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1057

(11th Cir. 2017). Counsel has the duty "to make reasonable investigation into petitioner's competency" or "to make a reasonable decision that such investigation was unnecessary." *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Pardo v. Sec'y, Florida Dep't of Corr.*, 587 F.3d 1093, 1102 (11th Cir. 2009) (citing *Strickland,* 466 U.S. at 691). Bradley contends that he received in-patient treatment for his alleged disorders in prison but identifies no specific evidence that would require counsel to investigate his competency and request a competency evaluation. The fact that he was treated for mental disorders or that he took anti-psychotic medication or anti-depressants would not establish his incompetency. *See Fallada*, 819 F.2d at1569 (stating that the mere fact that the petitioner was treated with anti-psychotic drugs did not *per se* render him incompetent to stand trial or obligate the court to hold a competency hearing, but was simply a relevant factor). *See also Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (citation omitted).

Contrary to Bradley's contentions, nothing in the trial record supports his assertion that his competency was in doubt. During trial and sentencing he responded appropriately to the court's questions, and the record discloses no

evidence that Bradley failed to understand the proceedings or communicate with counsel. Based on his behavior and participation during the proceedings, Bradley failed to demonstrate that his counsel performed deficiently. The state court reasonably applied *Strickland* and reasonably determined the facts in reaching its decision.[9] Ground five warrants no relief.

## E. Ground Six

Bradley alleges that his trial counsel rendered ineffective assistance by not eliciting on cross-examination of Moore, the victim, that the perpetrator did not smoke during the robbery. (Doc. 1 at 55) Bradley argues that this testimony would have negated the State's theory that Bradley discarded a cigarette in the hotel office at the time of the robbery. (Doc. 1 at 56 and 58) Bradley raised this ground in an amended post-conviction motion. (Resp. Ex. 16) After summarizing the State's evidence, the post-conviction court denied relief with this explanation (Resp. Ex. 18 at 10–11):

> Defense counsel elicited testimony from the crime laboratory analyst that the DNA on the cigarette stub could last indefinitely, and that the DNA testing could not have indicated

---

[9] Bradley does not present a substantive competency claim but even if this ground is construed to raise a substantive competency claim, that claim although unexhausted may be denied on the merits. The standard for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Lawrence v. Sec'y, Florida Dep't Corr.*, 700 F.3d 464, 480–81 (11th Cir. 2012) (citing *Dusky v. United States*, 362 U.S. 402 (1960)). Bradley is entitled to no presumption of incompetency and must demonstrate his incompetency by a preponderance of the evidence. *Lawrence*, 700 F.3d at 481 (citation omitted). Bradley must, to "be entitled to an evidentiary hearing" present "clear and convincing evidence that creates a real, substantial, and legitimate doubt as to his competence." (citations omitted). He presents no such evidence.

how or when the cigarette stub was left on the office floor. Defense counsel made an emphatic closing argument and argued that the evidence did not show that the perpetrator was smoking; counsel pointed out the fact that Mr. Moore did not mention that the perpetrator was smoking a cigarette during the robbery, and argued to the jury that it did not make sense that the perpetrator had a lit cigarette and at some point snuffed it out while leading the victim to a cash drawer, hog-tying him, and making his getaway. Counsel argued the fact that Defendant had been at the hotel earlier that day and that he went into the office to pick up his paycheck, argued that the cigarette stub could have been there before, and argued that the State had not proven that the cigarette was left behind at the time of the robbery. Nonetheless, the jury found that there was sufficient evidence to find Defendant guilty of the robbery beyond a reasonable doubt. In light of the testimony of Mr. Moore, the other evidence presented by the State, and the arguments presented at trial by defense counsel, Defendant has not shown a reasonable probability that the finding of the jury would have been different had counsel elicited testimony from Mr. Moore that he definitively did not observe the perpetrator smoking a cigarette during the robbery.

In addition the state court found that, had Moore testified that he did not observe the perpetrator smoking a cigarette, trial counsel would not have sufficient grounds to pursue a judgment of acquittal, given the abundance of the State's evidence at trial. (Resp. Ex. 18 at 11–12)

The state court's decision was not contrary to, or an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts. The hotel manager's and Moore's testimony supported a finding that Bradley discarded the cigarette with his DNA on the office floor at the time of the robbery. In view of this and the other evidence of his guilt, Bradley failed to show a reasonable

probability of a different outcome had Moore testified that he did not observe the perpetrator smoking a cigarette.  Ground six warrants no relief.

### F.  Ground Seven

Bradley contends that the cumulative effect of trial counsel's alleged errors deprived him of his rights to due process and effective counsel.  (Doc. 1 at 62) Bradley raised this ground in a supplemental post-conviction motion.  (Resp. Ex. 13) The post-conviction court denied relief because the state court rejected Bradley's claims of ineffective counsel (Resp. Ex. 18 at 9), including one claim that the state court denied in a later order.  (Resp. Ex. 20)  Even assuming that this ground is cognizable, Bradley has not demonstrated that any of the alleged failings of counsel constituted ineffective assistance.  Consequently there are no errors to accumulate. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (holding that the applicant's claim of cumulative error must fail because none of his individual claims of error or prejudice had any merit).  Ground seven warrants no relief.

Accordingly, Bradley's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Bradley and **CLOSE** the case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Bradley is not entitled to a certificate of appealability ("COA").  An applicant for the writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first

issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Bradley must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Because he has failed to make the requisite showing, Bradley is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Bradley must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 30, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE